UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
THE TRUSTEES OF THE LOCAL 295 IBT
EMPLOYER GROUP PENSION FUND and THE
LOCAL 295 IBT EMPLOYER GROUP PENSION
FUND,

          Plaintiffs.

  - against -

LIONE EXPRESS, INC., D&G LOGISTICS
CONSULTING, LLC, DOMENIC FRANTELLIZZI,
and GREGORY PADULA,

          Defendants.
--------------------------------------------------------------------x

ECF

**COMPLAINT**

19-CV-

Plaintiffs, the Trustees of the Local 295 IBT Employer Group Pension Fund and the Local 295 IBT Employer Group Pension Fund (the "Fund") by their attorneys, Cary Kane LLP, respectfully allege as follows:

## NATURE OF THE ACTION

1. The Fund's Trustees (the "Trustees") bring this action in their capacities as fiduciaries of the Fund against Lione Express, Inc. ("Lione"), a former participating employer. Lione owes the Fund withdrawal liability payments pursuant to Sections 4201 through 4225 and 4301 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1381 through 1405 and 1451.

2. This action is also brought against D&G Logistics Consulting, LLC. ("D&G"), which is a trade or businesses under common control with Lione and, thus, jointly and severally liable for the money due to the Fund, pursuant to Section 4001(b) of ERISA, 29 U.S.C. § 1301(b), and Sections 414(b) and (c) and Section 1563 of the Internal Revenue Code of 1986, as amended ("the Code").

1

3. The Trustees also seek payment of Lione's withdrawal liability from Domenic Frantellizzi ("Frantellizzi) and Gregory Padula ("Padula") (together, the "Principals"), each of whom owned 50% of both Lione and D&G at all relevant times, and each of whom was an alter ego of Lione and of D&G.

## JURISDICTION

4. This court has original jurisdiction over the Fund's claims for payment of withdrawal liability pursuant to Sections 502(a) and (e) and Sections 4301(a) and (c) of ERISA, 29 U.S.C. §§ 1132(a) and (e), 1451(a) and (c).

5. This court has supplemental jurisdiction over the claims herein that arise under state law pursuant to 28 U.S.C. §1367(a) because those claims arise out of a common nucleus of operative facts and are so related to the claims in the action for which the court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

6. As the Fund is administered at 60 Broad Street, New York, New York which is within the Southern District of New York, this action is properly brought in this district pursuant to Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d).

## THE PARTIES

7. The Fund is an "employee pension benefit plan" and "multiemployer plan" as those terms are defined by Sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and 1002(37). The Fund is administered at 60 Broad Street, New York, New York.

8. The Plaintiff Trustees have been, at all times material hereto, the "plan sponsor" of the Fund, as defined by Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B). The Trustees are "fiduciaries" of the Fund, as defined by Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

9. Lione was, at all times material hereto, an "employer" as defined by Section 3(5) of ERISA, 29 U.S.C. §1002(5), with offices located at 149-10 183d Street, Jamaica, New York. As Lione is a corporation, it is not an infant, incompetent or in the military service.

10. D&G was, at all times material hereto, a trade or business under common control with Lione pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1). Upon information and belief, D&G was operated out of Frantelizzi's home. As D&G is a corporation, it is not an infant, incompetent or in the military service

11. Frantellizzi was, at all times material hereto, an individual who owned 50% of the shares of both Lione and D&G and who, with Padula, exercised complete domination over both Lione and D&G and misused his domination over these companies in order to avoid paying withdrawal liability to the Fund. Upon information and belief, Frantellizzi resides at 743 Princeton Road, Franklin Square, New York. Upon information and belief, Frantellizzi is not an infant, incompetent or in the military service.

12. Padula was, at all times material hereto, an individual who owned 50% of the shares of both Lione and D&G and who, with Frantellizzi, exercised complete domination over both Lione and D&G and misused his domination over these companies in order to avoid paying withdrawal liability to the Fund. Upon information and belief, Padula resides at 42 Centre Street, Woodmere, New York. Upon information and belief, Padula is not an infant, incompetent or in the military service.

**RELEVANT FACTS**

13. At all relevant times, Lione was an employer that participated in the Fund and contributed to the Fund for those of its employees covered by collective bargaining agreements between Lione and Local 295 IBT (the "Union").

14. At all relevant times, Lione was a small privately held corporation which was wholly owned, and wholly controlled by the Principals, who were Lione's only shareholders.

15. In or about November 2015, the Principals formed D&G, another small privately held corporation which was wholly owned and wholly controlled by the Principals.

16. Upon information and belief, D&G was a shell company with no offices other than Frantellizzi's home and no personnel other than the Principals.

17. Upon information and belief, D&G was formed solely for the use of Lione in funding new equipment.

18. During 2016, the Principals caused the transfer of $250,000 from Lione to D&G.

19. Upon information and belief, this transfer was made so that D&G could purchase equipment for Lione through D&G.

20. In October 2016, Lione was dissolved by proclamation. It ceased operations in June 2017. At that time, Lione permanently ceased to have an obligation to make contributions to the Fund and/or ceased all covered operations under the Fund, causing a complete withdrawal from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a). As a result, Lione incurred withdrawal liability within the meaning of Section 4201 of ERISA, 29 U.S.C. § 1381, et seq.

21. Upon information and belief, at the time Lione ceased operations, D&G had not funded equipment for Lione or otherwise used the assets transferred by Lione for any business purpose.

22. Plaintiffs requested that the Fund's actuary determine, pursuant to Section 4213 of ERISA, 29 U.S.C. § 1393, the withdrawal liability owed by Lione to the Fund. The Fund's actuary determined that Lione owed the Fund withdrawal liability in the amount of $398,383.

23. Pursuant to Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), and by letter dated June 7, 2017, which was sent via certified mail with return receipt, the Fund notified Defendants that withdrawal liability was due to the Fund in the amount of $398,373 and was payable in 56 quarterly payments of $10,272.09 each, followed by a final payment of $9,527.50. The first quarterly payment was due no later than August 1, 2017. The Fund demanded that the quarterly payments be made accordingly.

24. The Fund's letter asked that Defendants provide information on all trades or businesses under common control with Lione.

25. Defendants did not provide information about D&G, which was under common control with Lione.

26. Notice of withdrawal liability to Lione constituted notice to D&G since D&G was under common control with Lione in accordance with Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1).

27. Defendants did not timely request review of any specific matter related to the determination of withdrawal liability or identify any inaccuracy in the determination of unfunded vested benefits in accordance with Section 4219(b)(2) of ERISA, 29 U.S.C. §1399(b)(2), or initiate arbitration of the withdrawal liability assessment as permitted by Section 4221(a) of ERISA, 29 U.S.C. §1401(a).

28. Under Section 4221(b)(1) of ERISA, 29 U.S.C.§ 1401(b)(1), Defendants waived their right to contest the withdrawal liability assessment by failing to timely initiate arbitration.

29. Defendants made the first three quarterly withdrawal liability payments, but failed to make the fourth quarterly withdrawal liability payment, which was due May 1, 2018.

30. By letter dated May 10, 2018, the Fund notified Lione that it was in default of its quarterly payments and that, if the default was not cured in 60 days, the Fund would institute legal action to recover the unpaid withdrawal liability, interest, liquidated damages and the costs of collection.

31. Defendants did not cure their default and, therefore, became liable to the Fund for the entire remainder of the withdrawal liability.

32. By letter dated October 11, 2018, Timothy S. Klimpl, Esq., a labor and employee benefits attorney with the firm Norris McLaughlin P.A., informed the Fund that Lione would not make any further payments of its withdrawal liability because it had only about $8,000 in assets remaining.

33. The letter from attorney Klimpl did not mention D&G, a trade or business that was under common control with Lione and thus, jointly and severally liable for the withdrawal liability owed to the Fund.

34. Based on a review of Lione's tax returns, the Fund learned of the existence of D&G and questioned the Principals, through attorney Klimpl, about monies paid to and distributed by D&G.

35. By letters dated February 12, 2019 and March 21, 2019 which responded to Fund counsel's questions about D&G, attorney Klimpl indicated that monies held by D&G were paid to the Principals as "compensation" in 2017 and 2018.

36. Upon information and belief, the Principals took monies from D&G for their personal use after having determined that Lione would cease making payments of its withdrawal liability to the Fund.

37. Upon information and belief, the Principals performed no tasks or duties for D&G that would have warranted payment of compensation from D&G.

38. Upon information and belief, the Principals withdrew monies from D&G so that D&G would not have to pay these monies toward the withdrawal liability owed to the Fund.

39. As of this date, Defendants have made no further payments toward their withdrawal liability.

## FIRST CAUSE OF ACTION- FOR PAYMENT OF WITHDRAWAL LIABILITY AGAINST LIONE

40. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 39 as if set forth fully herein.

41. Pursuant to Section 4219(c)(5) of ERISA, 29 U.S.C. §1399(c)(5), Lione's default now obligates it to pay the Fund the remainder of its withdrawal liability.

42. Pursuant to Sections 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), Lione is also liable to the Fund for interest, liquidated damages, costs and attorneys' fees.

## SECOND CAUSE OF ACTION- FOR PAYMENT OF WITHDRAWAL LIABILITY AGAINST D&G

43. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 42 as if set forth fully herein.

44. D&G. is a corporation under common control with Lione pursuant to Section 4001(b) of ERISA, 29 U.S.C. § 1301(b), and as defined in Sections 414(b) and (c) and Section

7

1563 of the Code, and is therefore liable to the Fund for Lione's unpaid withdrawal liability, as well as interest, liquidated damages, costs and attorneys' fees awarded pursuant to Sections 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

## THIRD CAUSE OF ACTION- FOR PAYMENT OF WITHDRAWAL LIABILITY AGAINST THE PRINCIPALS, FRANTELLIZZI AND PADULA

45. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 44 as if set forth fully herein.

46. Upon information and belief, Lione and D&G were both completely controlled by the Principals and were alter egos of each other and of the Principals.

47. Upon information and belief, the Principals exercised complete domination over Lione and D&G in that they ran and made all decisions as to the operations of both businesses, caused the transfer of assets from Lione to D&G, and had the sole power and authority to determine the amounts of compensation, including salaries, that would be paid to them by Lione and D&G and to cause payment of such compensation.

48. Upon information and belief, the Principals inappropriately transferred assets of Lione from D&G to their own accounts without the exchange of a substantive benefit.

49. Upon information and belief, assets of Lione that were held by D&G were paid to the Principals in the guise of salary from D&G, despite the fact that neither of the Principals performed work for D&G or offered anything of value in exchange for his "salary."

50. Upon information and belief, D&G was used as a mere instrumentality for the transactions of Lione's and the Principals' affairs.

51. Upon information and belief, the Principals paid themselves unearned "salary" from D&G in order to deplete D&G's assets so that these assets would not be available to pay debts owed by D&G, including withdrawal liability owed to the Fund.

52. Upon information and belief, there was such unity of interest between the Principals and Lione and D&G that the separate personalities of corporation and owner ceased to exist.

53. Justice requires recognizing the substance of the relationships over the form because the corporate fiction distinguishing between Lione, D&G, and the Principals was used to thwart a valid claim for withdrawal liability payments by the Fund against Lione and D&G. See, *Phillips v. Reed Group, Ltd*., 955 F. Supp. 2d 201, 212 (S.D.N.Y.. 2013).

54. An equitable result would be achieved by disregarding the corporate form and holding the Principals personally liable for the withdrawal liability because Lione has been drained of assets and, without piercing the corporate veil, the Fund will be unable to recoup any further withdrawal liability payments for the benefit of its participants and beneficiaries. *Id.*

## **FOURTH CAUSE OF ACTION- FOR FRAUDULENT CONVEYANCE- AGAINST ALL DEFENDANTS**

55. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 54 as if set forth fully herein.

56. During the 2016-2017 fiscal year (during which Lione was dissolved, ceased operations and was assessed withdrawal liability), the Principals took "compensation" from Lione of $358,960, which was $87,785 more than they had received in payment from the company during the previous year. Upon information and belief, the amounts paid to the

9

Principals exceeded fair consideration for the services performed by the Principals during that fiscal year.

57. At the time the Principals took "compensation" of $358,960 from Lione, Lione was insolvent because its assets were insufficient to meet the debts owed to creditors, including the withdrawal liability owed to the Fund.

58. During the 2017-2018 fiscal year (during which Lione's counsel informed the Fund that Lione could no longer afford to pay its withdrawal liability to the Fund), the Principals took $99,000 in "compensation" from Lione, despite the fact that the company was no longer in operation. Upon information and belief, the Principals did not perform services for Lione which would constitute fair consideration for the "compensation" paid or provide anything else of value to Lione as fair consideration for the "compensation" paid to them.

59. At the time the Principals took "compensation" of $99,000 from Lione, Lione was insolvent because its assets were insufficient to meet the debts owed to creditors, including the withdrawal liability owed to the Fund.

60. Because D&G was jointly and severally liable for the withdrawal liability owed to the Fund, the withdrawal liability was a debt that D&G owed to the Fund.

61. At the time the withdrawal liability was incurred, D&G was insolvent because its assets were insufficient to pay its creditors, including the Fund.

62. The Principals transferred monies from D&G to themselves after D&G became insolvent.

63. Upon information and belief, the Principals did not perform services for, or provide anything else of value to, D&G which would constitute fair consideration for monies paid to the Principals after D&G became insolvent.

64. The transfers of monies to the Principals after Lione and D&G became insolvent were fraudulent conveyances under New York Debtor and Creditor Law sections 270-281.

### FIFTH CAUSE OF ACTION- - AGAINST LIONE AND THE PRINCIPALS

65. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 64 as if set forth fully herein.

66. Pursuant to the New York Business Corporations Law, upon Lione's dissolution in October 2016, all assets distributed to the Principals were required to be held by the Principals in trust for the benefit of the corporation's creditors.

67. Upon information and belief, the Principals received assets upon Lione's dissolution which should have been held by the Principals in trust for the benefit of the corporation's creditors, which included the Fund.

68. The Principals are jointly and severally liable to the Fund, as an existing creditor of the corporation, for all corporate property that was distributed to them upon Lione's dissolution.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a) Judgment against all of the Defendants for the remaining unpaid withdrawal liability, as mandated by ERISA Section 502(g)(2)(A), 29 U.S.C.§ 1132(g)(2)(A), interest on the unpaid withdrawal liability from the date payment was due through the date payment is made, as mandated by ERISA Section 502(g)(2)(B), 29 U.S.C.§ 1132(g)(2)(B), liquidated damages equal to the greater of (i) 20% of the amount of withdrawal liability due or (ii) the amount of interest due, as mandated by ERISA Section 502(g)(2)(C), 29 U.S.C.§ 1132(g)(2)(C), and reasonable attorneys' fees and the costs of this action, as mandated by ERISA Section 502(g)(2)(D), 29 U.S.C.§ 1132(g)(2)(D);

(b) An order directing (i) that Defendants provide a full accounting of all monies obtained by the Principals through the fraudulent conveyances from Lione and D&G, as well as interest or other proceeds obtained through the investment or use of these monies, and (ii) the imposition of a constructive trust over these monies;

(c) An order directing that the monies fraudulently transferred to the Principals, and all interest or other proceeds obtained through the investment or use of these monies, be turned over to the Fund to be applied to the withdrawal liability owed by Defendants;

(d) An order directing (i) that the Defendants provide a full accounting of all monies distributed to the Principals after Lione's dissolution, as well as interest or other proceeds obtained through the investment or use of these monies, and, the imposition of a constructive trust over these monies;

(e) An order directing that all monies distributed by Lione to the Principals after Lione's dissolution, and all resulting profits, interest or other proceeds, be turned over to the Fund to be applied to the withdrawal liability owed by Defendants; and

(f) Such other and further relief as the Court deems appropriate.

DATED: August 26, 2019
    New York, New York

                                             CARY KANE LLP
                                             /S/
                                             _____
                                             By:    Susan Bruno
                                             1350 Broadway, Suite 1400
                                             New York, New York  10018
                                             T: 212-868-6300
                                             F: 212-868-6302
                                             sbruno@carykane.com

                                             *Attorneys for Plaintiffs*